## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 52344

| | | |
|---|---|---|
| MARK HEATH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, May 2026 Term |
| | ) | |
| v. | ) | Opinion Filed: June 30, 2026 |
| | ) | |
| TAIT OLAVESON, DO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent, | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michael J. Whyte, District Judge.

The judgment of the district court is <u>affirmed</u>.

Browning Law, Idaho Falls, for Appellant. Allen Browning argued.

Powers Farley, PC, Boise, for Respondent. Mark Orler argued.

_____

BEVAN, Chief Justice.

This appeal concerns whether a plaintiff's out-of-area medical expert met the foundational requirements of Idaho Code sections 6-1012 and 6-1013. Mark Heath filed this medical malpractice action following complications from a surgery performed by Dr. Tait Olaveson in Idaho Falls in 2019. As part of his claim, Heath sought to prove the community standard of care and breach of that standard through the testimony of Dr. Michael Meara, an out-of-area medical expert. The district court struck both Dr. Meara's first affidavit and an amended affidavit after concluding that they did not establish a foundation for Dr. Meara to testify about the community standard of care. Those affidavits indicated that Dr. Meara familiarized himself with the standard of care by consulting with a local expert in the "Idaho Falls/Pocatello area." As a result of its decisions striking Dr. Meara's affidavits, the district court granted Dr. Olaveson's motion for summary judgment, reasoning that Heath had not presented admissible evidence on an essential

1

element of his claim. After entering judgment, the district court awarded Dr. Olaveson his costs as a matter of right under Idaho Rule of Civil Procedure 54(d).

On appeal, Heath alleges that the district court (1) applied the incorrect summary judgment standard, (2) abused its discretion in failing to acknowledge that the applicable standard of care in this matter is the national standard of care, (3) improperly weighed evidence at summary judgment, (4) failed to take judicial notice that Idaho Falls and Pocatello are the same medical community for purposes of Idaho Code sections 6-1012 and 6-1013, and (5) prematurely awarded attorney fees[1] and costs to Dr. Olaveson. For the reasons below, we affirm the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

This appeal presents legal issues with little factual background. For context, the parties do not dispute that Heath underwent a cholecystectomy—a gallbladder removal surgery—performed by Dr. Olaveson on or around July 2, 2019, at Eastern Idaho Regional Medical Center ("EIRMC"). Nor do the parties dispute that Dr. Olaveson is a board-certified general surgeon.

Heath alleges that his surgery went horribly wrong. In Heath's telling, what should have been a routine laparoscopic gallbladder removal ended with lacerations to his intestines, a bisected liver, a severed hepatic artery, a large incision across his abdomen, and an emergency air ambulance flight to the University of Utah Medical Center to save his life. Heath maintains, and Dr. Olaveson disputes, that Dr. Olaveson's treatment fell below the applicable community standard of care.

### B.  Procedural Background

On July 1, 2021, Heath sued both Olaveson and EIRMC for medical malpractice. For reasons unrelated to this appeal, EIRMC was dismissed as a party and Heath proceeded in this action solely against Dr. Olaveson. Heath's subsequent attempts to establish a foundation for his out-of-area medical expert's testimony on the community standard of care form the basis of this appeal. Each is discussed in turn.

  1. *Heath's Motion for Partial Summary Judgment, the Meara Affidavit, and the district court's March 6 Memorandum Decision and Order.*

---

[1] Heath asserts in his brief three separate times that the district court prematurely awarded "attorney fees and costs" to Dr. Olaveson. The district court made no award of attorney fees in this case. Any reference to the same is erroneous.

Heath filed a motion for partial summary judgment on November 9, 2023. Heath requested that the district court conclude that Dr. Olaveson was subject to a national standard of care by virtue of his board-certification. Since Dr. Olaveson is a board-certified general surgeon, Heath argued that all he needed to show breach of the standard of care was the expert testimony of another board-certified general surgeon. To that end, he submitted the affidavit of Dr. Michael Meara ("Meara Affidavit"), a board-certified general surgeon working at Ohio State University. Although Heath took the position that Dr. Meara did not need to familiarize himself with the local standard of care, Dr. Meara's affidavit stated that he "consulted Dr. Bret[2] [sic] McRoberts, a board-certified general surgeon practicing in the Idaho Falls/Pocatello area throughout the year 2019" when forming his opinions.

In response, Dr. Olaveson argued that a board-certified physician is not automatically subject to the national standard of care. Instead, Dr. Olaveson argued that Idaho law required an out-of-area expert to inquire of a local specialist to ensure that there were no deviations between the local standard of care and the national standard of care for a board-certified doctor. Along with his opposition, Dr. Olaveson submitted the affidavit of Dr. David Chamberlain, which cast doubt on whether the local specialist Dr. Meara consulted with (Dr. McRoberts) had actual knowledge of the standard of care in Idaho Falls in 2019. Dr. Chamberlain's affidavit stated that he was a board-certified general surgeon practicing in the Idaho Falls area since 2000 and that he was professionally familiar with Dr. Drew McRoberts, who performed surgeries at Portneuf Medical Center in Pocatello but did not perform surgeries in Idaho Falls.

Dr. Olaveson contemporaneously moved to strike the Meara Affidavit. He argued that it was inadmissible because it did not establish Dr. Meara's foundation to testify that the local standard of care did not deviate from the national standard of care for board-certified general surgeons. Specifically, Dr. Olaveson contended that Dr. Meara's assertion that he had consulted with Dr. McRoberts, a board-certified general surgeon in the "Idaho Falls/Pocatello area," did not meet the foundational requirements of Idaho Code section 6-1013.

The district court agreed with Dr. Olaveson, granting his motion to strike and denying Heath's motion for partial summary judgment on March 6, 2024 ("March 6 MDO"). On the motion

---

[2] Dr. McRoberts' first name is Andrew and he goes by Drew. The Meara Affidavit's reference to Dr. Bret McRoberts appears to be a typographic error and there has not been a dispute that Heath relied on Dr. Drew McRoberts as a local consulting expert. Heath corrected this error in later filings.

to strike, the district court noted that the Meara Affidavit did "not state where Dr. McRoberts works, how long he has been in practice, [his] familiarity with the type of surgery Dr. Olaveson performed . . . , how long their conversation was or what was discussed." (Footnote omitted). Without more, the district court reasoned that the Meara Affidavit did not give information necessary "to even determine if Dr. McRoberts is able to testify about the community standard of care himself, much less familiarize an out-of-area expert" with it. The district court also clarified "that Idaho Falls and Pocatello are not necessarily and/or automatically the same medical community." Accordingly, the district court struck the Meara Affidavit for lack of foundation.

As for Heath's motion for partial summary judgment, the district court concluded that board-certified Idaho physicians were not automatically subject to the national standard of care. Instead, the district court cited to this Court's decision in *Dlouhy v. Kootenai Hospital District*, 167 Idaho 639, 474 P.3d 711 (2020), for the proposition that an out-of-area expert must meet two elements in order to testify that the national standard of care is applicable to a defendant by virtue of a board-certification. First, the out-of-area expert must be board certified in the defendant's specialty. *Id.* at 646, 474 P.3d at 718. Second, the out-of-area expert must "inquire of the local standard to insure there are no local deviations from the national standard . . . ." *Id.* (citaton omitted). Accordingly, the district court denied Heath's motion for summary judgment.

2. *Heath's first Motion to Reconsider, the Amended Meara Affidavit, and the district court's May 24 Memorandum Decision and Order.*

On March 20, 2024, Heath filed his first motion to reconsider. He noticed a hearing on that motion for April 17, 2024. Heath argued that the district court erred in striking the Meara Affidavit because (1) Heath had filed an amended affidavit and (2) the admissibility requirements of Idaho Code sections 6-1012 and 6-1013 did not apply at the summary judgment stage. Dr. Olaveson's response pointed out that Heath had not filed an amended expert affidavit and that, even if he had, that affidavit would still need to demonstrate that a foundation had been established for the expert to testify to the applicable community standard of care consistent with Idaho Code sections 6-1012 and 6-1013.

Heath subsequently filed the Amended Affidavit of Dr. Michael Meara ("Amended Meara Affidavit") on April 12, 2024, just days before the hearing on his motion to reconsider. The Amended Meara Affidavit stated that Dr. Meara had familiarized himself with the local standard of care by "consult[ing] with Dr. Drew McRoberts, a board-certified general surgeon practicing in the Idaho Falls/Pocatello area throughout 2019, regarding the local standard of care regarding

4

cholecystectomy in the setting of Mirizzi's Syndrome" and by confirming "that the local standard of care was equivalent to the national standard of care[.]"

Dr. Olaveson filed a motion to strike the Amended Meara Affidavit on April 15, 2024. He argued that the Amended Meara Affidavit was untimely under Idaho Rule of Civil Procedure 7(b)(3)(A) and should be stricken on that basis. Further, Dr. Olaveson argued that, even if the Amended Meara Affidavit had been timely filed, it should nonetheless be stricken because it suffered from the same deficiencies as the Meara Affidavit.

The district court denied Heath's motion to reconsider and granted Dr. Olaveson's second motion to strike in a May 24, 2024, Memorandum Decision and Order ("May 24 MDO"). First, the district court struck the Amended Meara Affidavit as untimely. However, the district court clarified that, while it was striking the Amended Meara Affidavit "for the motion to reconsider, this determination d[id] not affect Heath's ability to sufficiently and properly obtain and submit a complete report from Dr. Meara in compliance with the [c]ourt's scheduling order and expert disclosure deadlines." Next, the district court determined that the Amended Meara Affidavit suffered from the same foundational defects as the Meara Affidavit. Specifically, it did not show "Dr. McRoberts' knowledge regarding the Idaho Falls area throughout 2019 for the particular medical procedure, how he is familiar with the standard of care and his knowledge with respect to whether the local standard deviated from the national standard." Accordingly, the district court struck the Amended Meara Affidavit and declined to revisit its decision striking the Meara Affidavit.

3. *Heath's Second Motion to Reconsider, the Meara Expert Report, Dr. Olaveson's Motion for Summary Judgment, and the district court's September 13 Memorandum Decision and Order.*

On June 7, 2024, Heath filed his second motion to reconsider, asking the district court to reconsider the May 24 MDO denying his first motion to reconsider and granting the motion to strike. Relevant here, Heath argued that the familiarization requirement applied by the district court in striking both the Meara Affidavit and the Amended Meara Affidavit did "not apply AT ALL in this matter." (Emphasis in original). Instead, he took the position that familiarization is only required for non-board-certified physicians.

After his second motion to reconsider, Heath filed and served his expert witness disclosures. Those disclosures included the report of Dr. Meara ("Meara Expert Report"). The

Meara Expert Report included a copy of the Amended Meara Affidavit struck by the district court in its May 24 MDO as an attachment.

On July 22, 2024, Dr. Olaveson filed a motion for summary judgment, arguing that Heath could not prove an essential element of his claim because he had not produced an expert qualified to testify as to the community standard of care. Dr. Olaveson's arguments paralleled the arguments he raised in both his first and second motions to strike: neither the Amended Meara Affidavit nor the Meara Expert Report demonstrated that Dr. Meara had the necessary foundation to testify as to the applicable community standard of care.

Heath's arguments in opposition reprised the arguments raised in his motion for partial summary judgment and both motions to reconsider. His only offer of evidence opposing Dr. Olaveson's motion for summary judgment was another copy of the Amended Meara Affidavit as well as a copy of the Meara Expert Report. Further, to the extent the Dr. McRoberts' practice area was at issue, Heath argued that this Court's decision in *Phillips v. Eastern Idaho Health Services, Inc.*, 166 Idaho 731, 463 P.3d 365 (2020), established as a matter of law that Pocatello and Idaho Falls were overlapping communities such that an expert from Pocatello could testify to the standard of care in Idaho Falls.

The district court heard argument on Dr. Olaveson's motion for summary judgment on August 20 and Heath's second motion to reconsider on August 27. Following those arguments, the district court issued a Memorandum Decision and Order on September 13, 2024 ("Sept. 13 MDO"), addressing the summary judgment motion, second motion to reconsider, and a variety of other outstanding motions not related to this appeal.

First, the district court denied Heath's second motion to reconsider, concluding that the May 24 MDO correctly struck both the Meara Affidavit and Amended Meara Affidavit. As to the Meara Affidavit, the district court explained that it lacked any statement that Dr. Meara had consulted with a local expert to ascertain if there were any deviations between the local and national standards of care. As to the Amended Meara Affidavit, the district court first made a point to note that it had been properly struck for being untimely. Next, the district court discussed how the Amended Meara Affidavit, even if it had been timely filed, still failed to establish Dr. Meara's foundation to testify to the applicable community standard of care. The district court noted that the bare assertion that Dr. McRoberts was a board-certified general surgeon in the "Idaho

Falls/Pocatello area" was insufficient to show how Dr. Meara familiarized himself with the community standard of care in Idaho Falls in 2019.

The district court rejected Heath's argument that *Phillips* established that Idaho Falls and Pocatello were the same medical community as a matter of law and instead noted that the geographic extent of a community is inherently a factual question. And, since Heath had presented no evidence to show how Idaho Falls and Pocatello were overlapping medical communities, the Amended Meara Affidavit did not demonstrate Dr. Meara's foundation to testify as to the community standard of care in Idaho Falls in 2019. Moreover, the district court explained that, even if it took judicial notice of the facts in *Phillips*, the Amended Meara Affidavit would still fall short because *Phillips* related to the medical community as it existed in 2015 and 2016, whereas this case arose in 2019.

Finally, the district court granted Dr. Olaveson's motion for summary judgment. The district court noted that its analysis on the summary judgment motion was the "opposite side of the coin" of its analysis on whether to strike the Meara Affidavit and Amended Meara Affidavit. To that end, the district court reiterated its analysis that Heath had not presented any qualified medical expert evidence to show the applicable community standard of care in Idaho Falls in 2019. Since the expert disclosure deadline had passed and Heath had not presented evidence to establish an essential element of his case, the district court granted Dr. Olaveson's motion for summary judgment. The district court entered a judgment dismissing Heath's complaint with prejudice on September 16, 2024.

*4. The district court awards Dr. Olaveson's costs.*

On September 30, 2024, Dr. Olaveson filed a memorandum of costs, claiming $3,594.94 in costs as a matter of right under Idaho Rule of Civil Procedure 54(d). Heath objected to Dr. Olaveson's Memorandum of Costs on October 15. Heath did not dispute the amount of costs claimed but argued that awarding costs would be premature since the matter was being appealed. In response, Dr. Olaveson noted that Heath's opposition was untimely under Rule 54(d)(5) and that, in any event, Heath's argument that a pending appeal makes an award of costs premature was unsupported by legal authority. The district court awarded Dr. Olaveson costs, concluding that Heath had waived all objections by failing to file a timely objection. The district court entered an amended judgment to that effect on October 25, 2024.

7

Heath timely appealed. However, Heath's notice of appeal did not identify the amended judgment as the judgment being appealed from, nor did it attach that judgment to the notice of appeal. Heath corrected this defect and filed an amended notice of appeal, which this Court accepted.

## II. ISSUES ON APPEAL

1. Has Heath waived his ability to challenge the district court's ruling striking the Amended Meara Affidavit for being untimely, rendering this appeal moot?

2. Has Heath waived his right to challenge the district court's ruling striking the Amended Meara Affidavit by failing to refer to it or the ruling on his second motion for reconsideration with particularity?

3. Did the district court err in granting Dr. Olaveson's motion for summary judgment?

4. Did the district court err in awarding costs below?

5. Is Heath entitled to attorney fees on appeal?

## III. STANDARDS OF REVIEW

This Court uses the same standard of review used by the district court when considering an appeal from a grant of summary judgment. *Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 472, 337 P.3d 627, 631 (2014) (citing *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012)). That is, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Dlouhy v. Kootenai Hosp. Dist.*, 167 Idaho 639, 643, 474 P.3d 711, 715 (2020) (quoting *Mattox*, 157 Idaho at 473, 337 P.3d at 632).

That said, with respect to the admissibility of expert testimony, the "liberal construction and reasonable inferences standard does not apply" because it is a "threshold matter" distinct from whether the evidence on the record creates a genuine dispute of material fact. *Id.* (first quoting *Mattox*, 157 Idaho at 473, 337 P.3d at 632; and then quoting *Arregui*, 153 Idaho at 804, 291 P.3d at 1003). Instead, courts must consider whether a witness's affidavit or deposition testimony "alleges facts which, if taken as true, would render the testimony of that witness admissible." *Id.* (quoting *Mattox*, 157 Idaho at 473, 337 P.3d at 632).

On that note, a district court's evidentiary rulings are reviewed under an abuse of discretion standard. *Id.* at 644, 474 P.3d at 716 (citing *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 369–

70, 373 P.3d 681, 687–88 (2016)). That standard asks "whether the district court: '(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'" *Id.* (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Finally, when reviewing a district court's decision on a motion for reconsideration, this Court uses the same standard of review applicable to the underlying motion. *Erie Props., LLC v. Glob. Growth Holdings, Inc.*, ___ Idaho ___, ___, 575 P.3d 827, 835 (2025) (quoting *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

## IV. ANALYSIS

As a preliminary matter, Dr. Olaveson raises two procedural arguments which we address before reaching the merits of Heath's argument. First, Dr. Olaveson argues that Heath has forfeited his ability to challenge the district court's decision to strike the Amended Meara Affidavit on timeliness grounds. Second, Dr. Olaveson argues that Heath has waived any challenge to the district court's May 24 MDO striking the Amended Meara Affidavit or the portions of its Sept. 13 MDO denying Heath's second motion to reconsider.

## A. The district court's summary judgment decision did not depend on the Amended Meara Affidavit being struck on timeliness grounds.

Dr. Olaveson argues that Heath has waived his ability to challenge the district court's decision to strike the Amended Meara Affidavit for being untimely by not addressing it in his brief on appeal. In Dr. Olaveson's view, this waiver is "fatal" to Heath's appeal. Although Dr. Olaveson does not articulate why Heath's alleged forfeiture of this issue is fatal to his appeal, we construe him to be making a mootness argument. That is, if Heath has waived any argument with respect to an independent basis the Amended Meara Affidavit was stricken, then any result this Court reached on the merits of the appeal would have no practical impact on the outcome of this case.

Heath concedes that he has not challenged the district court's decision with respect to the timeliness of the Amended Meara Affidavit but argues that he did not need to challenge that decision on appeal. Rather, he argues that the district court only struck the Amended Meara Affidavit for purposes of Heath's first motion to reconsider. Since the Amended Meara Affidavit was resubmitted to the district court several times after being stricken, Heath asserts that it

9

remained available for the district court's consideration when ruling on Dr. Olaveson's motion for summary judgment. Heath is correct on this point.

"[T]his Court does not decide moot cases." *Edmondson v. Finco*, 172 Idaho 421, 424, 533 P.3d 1012, 1015 (2023) (quoting *Comm. for Rational Predator Mgmt. v. Dep't of Agric.*, 129 Idaho 670, 672, 931 P.2d 1188, 1190 (1997)). An appeal may be dismissed where it presents only a moot question. *Id.* (citing *Goodson v. Nez Perce Cnty. Bd. of Cnty. Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000)). A case is moot when the judicial determination requested would not have an "effect either directly or collaterally on the plaintiff, the plaintiff would be unable to obtain further relief based on the judgment and no other relief is sought in the action." *Mitchell v. Ramlow*, 174 Idaho 723, 726, 559 P.3d 1210, 1213 (2024) (quoting *Idaho Schs. for Equal Educ. Opportunity ex rel. Eikum v. Idaho State Bd. of Educ. ex rel. Mossman*, 128 Idaho 276, 282, 912 P.2d 644, 650 (1996)).

Dr. Olaveson's arguments are unavailing. This appeal is not moot because the district court's Sept. 13 MDO did not depend on its conclusion that the Amended Meara Affidavit was untimely with respect to the hearing on Heath's first motion to reconsider. Instead, the portion of the Sept. 13 MDO granting Dr. Olaveson's motion for summary judgment discusses only the foundational defects in the Amended Meara Affidavit and makes no reference to its decision to strike the Amended Meara Affidavit as untimely. To the extent the Sept. 13 MDO mentions the timeliness issue, it is in reference to denying Heath's second motion to reconsider, which requested the district court to reconsider its May 24 MDO. By reaffirming that it correctly decided its May 24 MDO, the district court did not preclude its consideration of the resubmitted Amended Meara Affidavit for purposes of Dr. Olaveson's motion for summary judgment.

On that point, Dr. Olaveson's arguments ignore the language of the May 24 MDO and the subsequent procedural history after that decision. Specifically, the district court left the door open for Heath to introduce additional expert affidavits in the May 24 MDO, explaining that, "[w]hile this court is striking and not considering Dr. Meara's amended affidavit *for the motion to reconsider*, this determination does not affect Heath's ability to sufficiently and properly obtain and submit a complete report from Dr. Meara in compliance with . . . expert disclosure deadlines." (Emphasis added). The Amended Meara Affidavit was subsequently reintroduced into the record three times. First, Heath submitted it along with Heath's expert witness disclosures in the Meara Expert Report, filed June 24, 2024. Second, Dr. Olaveson's declaration of counsel in support of

his motion for summary judgment included a copy of the Meara Expert Report and Amended Meara Affidavit. Third, Heath submitted a copy of the Amended Meara Affidavit with his opposition to Dr. Olaveson's motion for summary judgment. To be sure, Heath's efforts to simply refile the Amended Meara Affidavit without attempting to remedy the foundational defects pointed out by the district court is not best practice. That said, by refiling the Amended Meara Affidavit, Heath cured the timeliness issue sufficient for the district court to consider it in conjunction with Dr. Olaveson's motion for summary judgment and for this Court to consider it on appeal.

**B. Heath has provided sufficient cogent argument and authority for appellate review.**

Next, Dr. Olaveson contends that Heath has waived any challenge to the district court's decision to strike the Amended Meara Affidavit in its May 24 MDO and its decision denying Heath's second motion to reconsider by failing to provide cogent argument. We likewise find this argument unpersuasive.

An appellant must identify alleged errors with particularity and support those claims with pertinent authority. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975)). This Court will not consider arguments that fail to do so. *Id.* A "general attack" on the district court's findings and conclusions "without specific reference to evidentiary or legal errors is insufficient to preserve an issue" on appeal. *Id.* (citing *Michael v. Zehm*, 74 Idaho 442, 445, 263 P.2d 990, 991 (1953)). Consequently, this Court will not consider arguments that lack "coherence, citations to the record, citations of appliable authority, or comprehensible argument." *Liponis v. Bach*, 149 Idaho 372, 375, 234 P.3d 696, 699 (2010) (quoting *Bach*, 148 Idaho at 791, 229 P.3d at 1153).

Heath has preserved his challenge to the district court's evidentiary decisions regarding the Amended Meara Affidavit and decision to grant Olaveson's motion for summary judgment. Heath has identified the portions of the district court's rulings he contends were erroneous, cited relevant portions of the record, and supported his assignments of error with pertinent legal authority. Although Heath's briefing is not the model of clarity, it contains sufficient argument and authority for this Court to identify the alleged legal and evidentiary errors and the grounds upon which those claims rest. As such, we conclude that Heath has not waived his arguments on appeal relating to the district court's decisions striking the Amended Meara Affidavit and granting Dr. Olaveson's motion for summary judgment.

**C. The district court properly granted Dr. Olaveson's motion for summary judgment.**

The district court granted Dr. Olaveson's motion for summary judgment on the basis that Heath had failed to establish an essential element of his medical malpractice claim. Specifically, the district court determined that Heath did not lay adequate foundation to establish that Dr. Meara possessed actual knowledge of the applicable community standard of care.

Heath raises several challenges to the district court's application of the admissibility standards set forth in Idaho Code sections 6-1012 and 6-1013. As explained below, each lacks merit. We affirm the district court's decision because Heath failed to lay foundation for Dr. Meara to testify regarding the applicable community standard of care. As a result, we need not address Heath's argument that the district court improperly weighed conflicting evidence concerning Dr. McRoberts' practice area. We begin by discussing the district court's admissibility determination, then we will address Heath's multitude of arguments regarding Idaho Code sections 6-1012 and 6-1013.

1. *The district court did not abuse its discretion in concluding that Dr. Meara's testimony was inadmissible.*

Medical malpractice plaintiffs must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant healthcare provider "negligently failed to meet the applicable standard of health care practice of the community" where the allegedly negligent care occurred "as such standard existed at the time and place . . . and as such standard then and there existed with respect to the [defendant's] class of health care provider . . . ." I.C. § 6-1012. In other words, the applicable community standard of care is defined according to three parameters: where the care occurred, when the care occurred, and the specialty of who rendered that care. *See id.*

The community standard of care can be established with local or out-of-area medical experts. *Dlouhy v. Kootenai Hosp. Dist.*, 167 Idaho 639, 644, 474 P.3d 711, 716 (2020) (citing I.C. §§ 6-1012, 6-1013). In either event, a medical expert must meet the foundational requirements of Idaho Code section 6-1013 to testify to both the applicable standard of care and breach of that standard. I.C. § 6-1013. That statute provides:

> [E]xpert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise

> coupled with actual knowledge of the applicable said community standard to which
> his or her expert opinion testimony is addressed[.]

*Id.* For out-of-area experts (as is the case here), actual knowledge of the community standard of care requires showing both a familiarity with the community standard and explaining how that expert became familiar with the community standard. *Dlouhy*, 167 Idaho at 645, 474 P.3d at 717 (citing *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002)); *see also* I.C. § 6-1013 (providing that "this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony").

For board-certified physicians, the community standard of care can be equivalent to the national standard of care. *See Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 230, 494 P.3d 769, 778 (2021) (quoting *Samples v. Hanson*, 161 Idaho 179, 183–84, 384 P.3d 943, 947–48 (2016)). Even so, "board-certified specialists are not automatically subject to the national standard of care by virtue of their certification," *Dlouhy*, 167 Idaho at 646, 474 P.3d at 718 (citations omitted); instead, an out-of-area expert must still meet two elements to demonstrate their qualifications to "testify about the applicable national standard of care," *Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 710–11, 535 P.3d 1069, 1083–84 (2023) (quoting *Kozlowski v. Rush*, 121 Idaho 825, 828, 828 P.2d 854, 857 (1992)). First, an out-of-area expert must possess the same board-certification as the defendant physician. *Dlouhy*, 167 Idaho at 646, 474 P.3d at 718 (quoting *Buck v. St. Clair*, 108 Idaho 743, 746, 702 P.2d 781, 784 (1985), *disavowed on other grounds by*, *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987)), *and*, *Samples*, 161 Idaho 179, 384 P.3d 943). Second, the out-of-area expert "must inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained." *Id.* (quoting *Buck*, 108 Idaho at 746, 702 P.2d at 784). There is no dispute here that Dr. Meara and Dr. Olaveson hold the same board certification. Instead, the issues on appeal relate to the second element and whether the Amended Meara Affidavit reveals enough about how Dr. Meara familiarized himself with the local standard of care to establish his foundation to offer medical opinions in this matter.

"A common means for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (citations omitted). "If the out-of-area expert consults with an Idaho

physician to learn the applicable standard of care, there must be evidence showing that the Idaho physician knows the applicable standard of care." *Ramos v. Dixon*, 144 Idaho 32, 37, 156 P.3d 533, 538 (2007) (citing *Dulaney*, 137 Idaho at 168, 45 P.3d at 824). Conclusory statements that a local physician is familiar with the relevant standard of care are insufficient. *Dulaney*, 137 Idaho at 169, 45 P.3d at 825 (citing *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989)). Instead, an out-of-area expert affidavit relying on a local physician must allege facts that demonstrate that the local physician had actual knowledge of the community standard of care. *See Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 749, 463 P.3d 365, 383 (2020) (citations omitted) ("A medical malpractice plaintiff must be able to demonstrate that the local familiarization consultants had actual, personal knowledge of this standard themselves."). Here, the district court determined that the Amended Meara Affidavit failed to lay a sufficient foundation for Dr. McRoberts' purported knowledge of the applicable community standard of care because the affidavit only identified his practice in the "Idaho Falls/Pocatello area" and did not explain how he became familiar with the Idaho Falls standard.

Critical to this appeal, "a threshold matter to the admissibility of the expert's testimony is defining the community." *Bybee v. Gorman*, 157 Idaho 169, 175, 335 P.3d 14, 20 (2014). The community is defined as the "geographical area ordinarily served by the licensed general hospital at or nearest to which" the allegedly negligent care was provided. I.C. § 6-1012. This is a factual issue that requires evidence to show where the patient base of a hospital is derived. *Phillips*, 166 Idaho at 751, 436 P.3d at 385 (citations omitted). Since people residing in one location may utilize the services of more than one hospital, this Court has recognized that communities may overlap. *Bybee*, 157 Idaho at 176, 335 P.3d at 21 (citing *Ramos*, 144 Idaho at 35, 156 P.3d at 536). To that end, for an expert to establish foundation to testify to the scope of the community, they "must identify the basis of the expert's knowledge of the patient base, and should attempt to identify, or even approximate, the frequency with which patients from one locale elect to receive services at one provider as opposed to another." *Phillips*, 166 Idaho at 751, 436 P.3d at 385 (citation modified) (quoting *Bybee*, 157 Idaho at 177, 335 P.3d at 22).

As noted, conclusory statements of familiarity with the community will not establish foundation. *Bybee*, 157 Idaho at 177, 335 P.3d at 22 (citations omitted). For instance, in *Bybee*, this Court considered whether a medical expert affidavit established actual knowledge of the community standard of care for cardiologists in Idaho Falls. *See id.* at 175, 335 P.3d at 20. As to

the existence of a community, the affidavit stated that the expert had "been licensed to practice medicine in Idaho since 2005 and [was] familiar with the standard of care applicable to cardiologists in the Idaho Falls/Pocatello area as it existed during 2007 through 2009." *Id.* at 177, 335 P.3d at 22 (citation modified). This Court held that conclusory statement insufficient to establish foundation to admit the expert's testimony. *Id.* This Court reasoned that the affidavit lacked foundation because it did "not identify the basis of [the expert's] knowledge as to where EIRMC patients come from and, more importantly, it d[id] not attempt to identify, or even approximate, the frequency which patients from Pocatello elect to receive services at EIRMC as opposed to Portneuf Medical Center, Bingham Memorial Hospital, MVH or other hospitals." *Id.*

Here, the district court repeatedly found that the Meara Affidavit and Amended Meara Affidavit failed to meet the above standards to establish foundation for the admissibility of Dr. Meara's testimony. Specifically, the district court determined that neither the Meara Affidavit nor the Amended Meara Affidavit demonstrated how the local consulting expert, Dr. McRoberts, had actual knowledge of the community standard of care sufficient to familiarize Dr. Meara.

First, the district court struck the Meara Affidavit in its March 6 MDO. The Meara Affidavit simply stated that Dr. Meara had "consulted Dr. Bret [sic] McRoberts, a board-certified general surgeon practicing in the Idaho Falls/Pocatello area throughout the year 2019." The district court determined that the Meara Affidavit did "not give the [c]ourt the information needed to even determine if Dr. McRoberts is able to testify about the community standard of care himself, much less familiarize an out-of-area expert of it." The district court also explained that a bare statement that Dr. McRoberts practiced in "the Idaho Falls/Pocatello area" was insufficient to show actual knowledge of the community standard of care because "Idaho Falls and Pocatello are not necessarily and/or automatically the same medical community[.]"

Next, the district court struck the Amended Meara Affidavit for the first time in its May 24 MDO. In the Amended Meara Affidavit, Dr. Meara stated:

> I consulted with Dr. Drew McRoberts, a board-certified general surgeon practicing in the Idaho Falls/Pocatello area throughout 2019, regarding the local standard of care regarding cholecystectomy in the setting of Mirizzi's Syndrome. He confirmed with me that the local standard of care was equivalent to the national standard of care[.]

In addition to striking the Amended Meara Affidavit for being untimely, the district court also struck the Amended Meara Affidavit because it was "still missing information regarding Dr. McRoberts' knowledge regarding the Idaho Falls area throughout 2019 for the particular medical

15

procedure, how he is familiar with the standard of care and his knowledge with respect to whether the local standard deviated from the national standard."

Finally, in its Sept. 13 MDO, the district court reaffirmed its May 24 MDO striking the Amended Meara Affidavit and concluded that the Amended Meara Affidavit still lacked foundation. Nothing about the Amended Meara Affidavit changed between the May 24 MDO and the Sept. 13 MDO, so the district court merely elaborated on its previous rulings and responded to Heath's additional arguments, discussed below, that Idaho Falls and Pocatello are the same medical community as a matter of law.

Of note, the district court emphasized that Heath had not placed any evidence into the record to show that Dr. McRoberts was practicing or performing surgeries in Idaho Falls in 2019, nor did Heath supply any information as to the scope of Dr. McRobert's practice in Pocatello. The district court noted that both the March 6 MDO and May 24 MDO made clear that establishing the community would require a factual showing that Idaho Falls and Pocatello were overlapping medical communities. Despite those clear directives regarding the foundational requirement required for a compliant expert affidavit, Heath neither revised the contents of the Amended Meara Affidavit nor supplemented the record with evidence establishing an overlapping medical community. The district court therefore concluded that it did "not have any facts that Dr. McRoberts was adequately familiar with the Idaho Falls medical community in order to appropriately familiarize Dr. Meara regarding the local standard of care and/or whether there were local deviations in Idaho Falls from the national standard of care."

The district court did not abuse its discretion in making these admissibility determinations. The district court perceived the issue as one of discretion, noting that its evidentiary rulings were subject to an abuse of discretion review and that it could strike testimony if it lacked adequate foundation. Likewise, it acted within the boundaries of that discretion by only considering whether to strike the Meara Affidavit and Amended Meara Affidavit based on the arguments presented to it. The district court also acted consistently with legal standards for how to appropriately lay foundation for an out-of-area, board-certified expert to testify that the national standard of care was coextensive with the local standard of care. Finally, the district court's decision was reasonable, as it soundly determined that no evidence existed in the record to demonstrate Dr. McRoberts' foundational knowledge of *any* standard of care sufficient to familiarize Dr. Meara. Since Dr. Meara's affidavit failed at the second *Dlouhy* element—that an out-of-area expert must

16

inquire into the local standard to insure there are no local deviations from the national standard—the district court reasonably concluded that Dr. Meara's testimony was inadmissible. Indeed, the Amended Meara Affidavit contains almost identical language to the expert affidavit in *Bybee* that this Court held too conclusory to establish foundation as to the community standard of care. Accordingly, we affirm the district court's evidentiary rulings because neither the Meara Affidavit nor the Amended Meara Affidavit established that his testimony was admissible under Idaho Code section 6-1013.

2. *Heath's arguments regarding Idaho Code sections 6-1012 and 6-1013 are unpersuasive.*

Heath raises several challenges to the district court's application of this Court's medical malpractice jurisprudence. Those challenges lack merit. Indeed, many are foreclosed by this Court's recent decisions, which address and reject the positions Heath advances on appeal. For almost every argument Heath makes, there is a precedent directly refuting that argument. To the extent addressing those arguments is needed to resolve this case, they are discussed below.

i. Board-certified physicians are not automatically subject to a national standard of care.

To begin, Heath argues that the district court misapplied legal standards by requiring Dr. Meara to familiarize himself with the local standard of care prior to testifying that the community standard of care is coextensive with the national standard of care.

Heath's argument is erroneous. As noted above, "board-certified specialists are not automatically subject to the national standard of care by virtue of their certification." *Dlouhy*, 167 Idaho at 646, 474 P.3d at 718. Instead, to have foundation, an out-of-area expert must (1) possess the same board-certification as the defendant physician and (2) "inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained." *Id.* (citation omitted).

Indeed, this Court in *Dlouhy* considered and rejected a nearly identical argument to the one Heath raises on appeal. *See id.* There, the appellant argued that, "for board-certified physicians, there is a national standard of care" and that Dlouhy's medical expert had actual knowledge of that standard because he held the same board certification as the defendant physician. *Id.* Here, Heath states that "[t]he standard appliable in the underlying case is the national standard, which requires no familiarization by [Dr. Meara] because he is already familiar with that standard." Consistent with *Dlouhy*, we reject Heath's argument.

17

Heath's attempts to distance himself from the two-part test in *Dlouhy* are likewise unavailing. Heath points to language from *Phillips* and *Summerfield*, originating in *Buck*, stating that, "for board-certified specialists, the local standard of care is equivalent to the national standard of care." *Summerfield*, 169 Idaho at 230, 494 P.3d at 778 (citation modified) (quoting *Samples*, 161 Idaho at 184, 384 P.3d at 948); *Phillips*, 166 Idaho at 747, 463 P.3d at 381 (quoting *Buck*, 108 Idaho at 745, 702 P.2d at 783). However, neither case applied the two-part foundation test articulated in *Dlouhy*.

In *Phillips*, the defendant physician was board-eligible rather than board-certified and this Court therefore had no occasion to apply *Dlouhy*. 166 Idaho at 748, 463 P.3d at 382. Likewise, *Summerfield* concerned whether a local medical expert without a board certification in general surgery possessed adequate foundation to testify regarding the standard of care applicable to a board-certified general surgeon. 169 Idaho at 230, 494 P.3d at 778. Because neither case involved an out-of-area, board-certified expert, neither required application of *Dlouhy's* foundation requirements.

Accordingly, neither *Phillips* nor *Summerfield* supports Heath's contention that an out-of-area expert may testify regarding the standard of care applicable to a board-certified physician without first demonstrating familiarity with the local standard of care as required by *Dlouhy*.

ii. <u>Idaho Falls and Pocatello are not the same community as a matter of law.</u>

Heath next argues that this Court's decision in *Phillips* established that Idaho Falls and Pocatello are the same medical community as a matter of law. Heath's position fundamentally misunderstands the scope of the *Phillips* decision.

In *Phillips*, this Court addressed whether a district court abused its discretion in ruling that the plaintiffs' local expert, who worked in Pocatello in 2016, could not familiarize an out-of-area expert with the standard of care in Idaho Falls in 2015. *Phillips*, 166 Idaho at 750–51, 463 P.3d at 384–85. In reaching its decision, the district court "engag[ed] in a hyper-technical mathematical analysis" to determine if Pocatello residents used hospital services in Idaho Falls with sufficient frequency to conclude that Idaho Falls and Pocatello were the same or overlapping medical communities. *Id.* at 751–52, 463 P.3d at 385–86. This Court held the district court abused its discretion because the law only required a determination as to whether "users of the hospital's services commonly go from one location [Pocatello] to the place where the hospital is located [Idaho Falls]." *Id.* at 752, 463 P.3d at 386 (alterations in original) (quoting *Bybee*, 157 Idaho at

176, 335 P.3d at 21). With that standard in mind, this Court noted that the plaintiffs established that Pocatello residents commonly sought treatment in Idaho Falls by using evidence gained in discovery to show the approximate number of Pocatello residents served by EIRMC during the years 2015 and 2016. *Id.* at 751, 463 P.3d at 385.

What this Court did not hold in *Phillips*, however, is that Pocatello and Idaho Falls are the same medical community *as a matter of law* for purposes of Idaho's medical malpractice statutes. Instead, this Court emphasized that "the geographical scope of the relevant community is a factual issue" governed by the definition set out in Idaho Code section 6-1012. *Id.* As to that factual issue, this Court further explained that an expert statement defining the medical community "must identify the basis of the expert's knowledge of the patient base, and should attempt to identify, or even approximate, the frequency with which patients from one locale elect to receive services at one provider as opposed to another." *Id.* (citation modified). Contrary to Heath's assertions, this Court's decision in *Phillips* did not relieve medical malpractice plaintiffs in eastern Idaho of their evidentiary burden to show the scope of the applicable medical community when the allegedly negligent care was rendered in Idaho Falls.

As to that burden, there is ample caselaw from this Court addressing whether a plaintiff met their burden to present sufficient evidence that cities in Eastern Idaho are overlapping medical communities. *See Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 710, 535 P.3d 1069, 1083 (2023) (finding insufficient evidence to show that Driggs and Idaho Falls were overlapping medical communities); *Phillips*, 166 Idaho at 751, 463 P.3d at 385 (finding sufficient evidence that Pocatello and Idaho Falls were overlapping medical communities); *Bybee*, 157 Idaho at 176, 335 P.3d at 21 (finding insufficient evidence that Idaho Falls and Pocatello were overlapping medical communities); *Gubler v. Boe*, 120 Idaho 294, 295 n.1, 815 P.2d 1034, 1035 n.1 (1991) (noting that Idaho Falls and Pocatello were separate medical communities as that term is used in Idaho Code section 6-1012). The result in each of these cases depended on whether the plaintiff presented a factual basis to conclude that the medical communities overlapped based on the frequency with which patients from one location used hospital services in another location. Here, the district court correctly noted that Heath failed to carry this burden because he chose not to present any evidence to demonstrate that Idaho Falls and Pocatello were overlapping medical communities.

iii. Idaho Code sections 6-1012 and 6-1013 apply at the summary judgment stage.

Finally, Heath argues that the district court prematurely applied trial-admissibility standards at the summary judgment stage. He primarily relies on *Lepper v. East Idaho Health Services, Inc.*, 160 Idaho 104, 369 P.3d 882 (2016), for the proposition that "Idaho Code sections 6-1012 and 6-1013 apply to the admissibility of expert witness testimony for trial, not to disclosures in the discovery stages of a case." That argument misreads *Lepper*.

An affidavit or declaration used to support or oppose a motion for summary judgment must set out facts that would be *admissible* in evidence. *See* I.R.C.P. 56(c)(4). In medical malpractice cases, Idaho Code sections 6-1012 and 6-1013 set the admissibility standards for these affidavits or declarations. Indeed, we recently explained that, "[t]o avoid summary judgment for the defense in a medical malpractice case, a plaintiff must overcome two significant hurdles." *Dodd v. Jones*, 175 Idaho 382, ___, 566 P.3d 379, 395 (2025). "First, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice" as defined by Idaho Code section 6-1012. *Id.* "Second, such expert testimony must meet the foundational requirements of Idaho Code section 6-1013." *Id.* (citing *Dulaney*, 137 Idaho at 164, 45 P.3d at 820). Thus, Heath's reliance on *Lepper* for a contrary position is misplaced.

*Lepper* concerned the contents of scheduling orders, not the admissibility of expert testimony at the summary judgment stage. 160 Idaho at 108, 369 P.3d at 886. There, a district court struck a plaintiff's medical expert witnesses because their disclosures did not indicate familiarity with the applicable standard of care. *Id.* at 106, 369 P.3d at 884. The district court assumed the foundational requirements of Idaho Code sections 6-1012 and 6-1013 automatically applied to the plaintiff's expert witness disclosures, even though the district court's scheduling order only required disclosure of expert opinions and conclusions. *Id.* at 109, 369 P.3d at 887. On appeal, this Court noted that "[t]here is a difference between the requirements for expert witness disclosures in the early discovery stages of a case, and the requirements for admissibility of expert witness testimony at trial *or in summary judgment*." *Id.* at 109, 369 P.3d at 887 (emphasis added). Accordingly, this Court held that the district court abused its discretion in holding the plaintiffs to a higher disclosure standard than what was apparent from the plain language of the scheduling order. *Id.* at 112, 369 P.3d at 890. This Court explained that a district court could require an expert

20

witness disclosure to include foundational information if it clearly stated as much in its scheduling order.[3] *Id.* at 111–12, 369 P.3d at 889–90.

In short, this Court in *Lepper* did not reach a holding about whether Idaho Code sections 6-1012 and 6-1013 applied at the summary judgment stage. Heath's argument misreads this Court's explanation of the difference between the baseline requirement of expert witness disclosures and admissibility standards at summary judgment.

**D. The district court did not err in awarding costs below.**

Heath argues that the district court prematurely awarded costs below because there is no prevailing party and this matter should be remanded for a trial. Dr. Olaveson argues that because the district court's decisions are correct, he remains the prevailing party and there is no need to disturb the district court's award of costs as a matter of right under Rule 54(d).

The district court awarded Dr. Olaveson costs as a matter of right under Rule 54(d)(1)(C) after determining that Heath failed to object to the memorandum of costs in a timely manner. Heath does not challenge that determination on appeal. He neither argues that his objection was timely nor contends that the district court misapplied Rule 54(d)(5). Accordingly, any challenge to the cost award has been waived. *See Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010) (noting that this Court will not consider issues unsupported by argument or authority (first quoting *Jorgenson v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); and then citing I.A.R. 35(a)(6))). In any event, since we affirm the district court's decision granting Dr. Olaveson's motion for summary judgment, we likewise conclude that the district court's award of costs below was appropriate.

**E. Heath is not entitled to attorney fees on appeal.**

As a final issue, Heath requests attorney fees and costs on appeal, citing only Idaho Appellate Rule 41. That perfunctory citation, unsupported by argument or authority, is insufficient to support an award of attorney fees. *See Capps v. FIA Card Servs., N.A.*, 149 Idaho 737, 745, 240 P.3d 583, 591 (2010); *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003). Moreover, because we affirm the district court's decisions striking Heath's expert affidavits and granting summary judgment in favor of Dr. Olaveson, Heath is not the prevailing party and is not entitled to attorney fees on appeal.

---

[3] Although not mentioned by Heath in his argument, the district court's scheduling order in this case required expert witness disclosures to include "opinions and conclusions and the foundation for such opinions and conclusions[.]"

## V.    CONCLUSION

The district court's decisions striking Dr. Meara's affidavits, granting Dr. Olaveson's motion for summary judgment, and awarding Dr. Olaveson costs are affirmed.

Justices BRODY, MOELLER, ZAHN, and MEYER concur.